Peter Paul SMEGA

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1998.
Decided March 16, 1999.

Marc A. Werlinsky, Harrisburg, for appellant.

Albert G. Feczko, Jr., Pittsburgh, for appellee.

Before COLINS, President Judge, and McGINLEY, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J., and FLAHERTY, J.

McGINLEY, Judge.

The Department of Transportation (Department) appeals from the order of the Court of Common Pleas of Allegheny County (trial court), dated December 18, 1997, which sustained the appeal of Peter Paul Smega (Smega) from a one-year suspension of his driver's license pursuant to Sections 1532(b)(3) and 1581 of the Vehicle Code (Code), 75 Pa.C.S. §§ 1532(b), 1581.[1]

On March 11, 1997, at 2:14 a.m., Smega was stopped in North Ridgeville, Ohio, and charged with violating Section 434.01(A)(1) of the North Ridgeville Ordinance (Ordinance), relating to driving under the influence of alcohol (DUI). On August 13, 1997, Smega appeared in North Ridgeville Mayor's Court and, following a plea of no contest to the DUI charge, was found guilty. Ohio is a party state to the Compact. In compliance with its obligation under Article III of the Compact, Ohio reported Smega's August 13, 1997, DUI conviction.

The Department, upon receipt of the Ohio report in compliance with its obligation under Article IV(a)(2), and (c), of the Compact, 75 Pa.C.S. § 1581, treated Smega's August 13, 1997, Ohio conviction as if Smega were convicted in Pennsylvania for violating Section 3731(a) of the Code, 75 Pa.C.S. § 3731(a). The Department notified Smega by mail on September 15, 1997, that his operating privilege was being suspended for one year, pur-

---

1. Section 1581 of the Code, 75 Pa.C.S. § 1581, codifies the Commonwealth's entry as a party state to the Driver License Compact of 1961 (Compact). Article IV(a)(2), and (c) of the Compact, 75 Pa.C.S. § 1581, state in pertinent part as follows:

   (a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to Article III of this compact, as it would if such conduct had occurred in the home state in the case of convictions for:

   . . .

   (2) driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle;

   . . .

   (c) If the laws of a party state do not provide for offenses or violations denominated or described in precisely the words employed in subdivision (a) of this article, such party state shall construe the denominations and descriptions appearing in subdivision (a) of this article as being applicable to and identifying those offenses or violations of a substantially similar nature and the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article.

   Under Section 1532(b)(3) of the Code, 75 Pa. C.S. § 1532(b)(3), the Department is required to suspend for one year the operating privilege of any person convicted of violating Section 3731 of the Code [Driving While Under the Influence]. *Sullivan v. Department of Transportation, Bureau of Driver Licensing,* 550 Pa. 639, 708 A.2d 481 (1998); *Commonwealth v. Wolf,* 534 Pa. 283, 632 A.2d 864 (1993).

suant to Section § 1532(b)(3) of the Code, 75 Pa.C.S. § 1532(b)(3), as a result of his Ohio DUI conviction.

On October 14, 1997, Smega brought a timely appeal from the Department's one year suspension to the trial court. A de novo hearing was held on December 18, 1997. At that hearing, the Department offered into evidence a packet of documents duly certified under seal by both the Secretary of Transportation and the Director of the Bureau of Driver Licensing. The packet contained the electronically transmitted conviction report from Ohio regarding Smega's August 13, 1997, DUI conviction, based upon a plea of no contest. The documents were admitted without objection.

Before the trial court Smega claimed that the Ordinance is not "substantially similar" to Section 3731(a) of the Code since the Ordinance prohibits the operation of a motor vehicle while under the influence of alcohol and does not specify any blood alcohol content level or threshold. Smega also argued that the Ordinance was not a "statute" for purposes of the Compact.[2]

■ After Smega established that Ohio suspended his driving privilege for six months in connection with his August 13, 1997, DUI conviction, the trial court sustained Smega's appeal. The trial court found that the Department's suspension of Smega's operating privilege under the Compact was a double jeopardy violation because Ohio had already suspended Smega's driving privileges for the same offense. The Department appealed.[3]

The Department contends that the trial court erred as a matter of law when it held that the operation of Article IV of the Compact violated the double jeopardy clause of the Fifth Amendment and of Article I, Section 10, of the Pennsylvania Constitution. We agree.

■ The double jeopardy clause of the United States Constitution[4] prohibits more than one punishment for the same offense. *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). Article 1, § 10 of the Pennsylvania Constitution provides the same protection. *Commonwealth v. Quinlan,* 433 Pa.Super. 111, 639 A.2d 1235, 1240, n. 4 (1994), *appeal dismissed,* 544 Pa. 183, 675 A.2d 711 (1996). The imposition of a one-year suspension as a result of Smega's Ohio DUI conviction, by operation of Section 1532(b)(3) of the Code and Article IV(1)(b) and (3) of the Compact, did not violate the Double Jeopardy Clause of either the Fifth Amendment or Article I, Section 10, of the Pennsylvania Constitution. First, because the imposition of the suspension flows automatically from Smega's underlying DUI conviction, and the Department has no discretion as to whether to impose the suspension, there was no separate "proceeding" for double jeopardy purposes. *Martin v. Department of Transportation, Bureau of Driver Licensing,* 672 A.2d 397 (Pa.Cmwlth.1996). Second, the suspension of the operating privilege is a collateral civil consequence of Smega's Ohio DUI conviction and is not "punishment" for double jeopardy purposes, since it serves the remedial purpose of protecting the general public from intoxicated drivers. *Krall v. Department of Transportation, Bureau of Driver Licensing,* 682 A.2d 63 (Pa. Cmwlth.1996). Finally, Smega's double jeopardy claim fails under the "dual sovereignty" doctrine.[5] *Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985).

Smega concedes that the trial court should not have sustained his statutory appeal on the basis of double jeopardy. However, he

---

**2.** Smega does not raise that argument before this Court.

**3.** Our review of a license suspension appeal is limited to a determination of whether findings of fact are supported by substantial evidence, an error of law was committed, or the court abused its discretion. *Department of Transportation, Bureau of Driver Licensing v. Fellmeth,* 108 Pa. Cmwlth. 172, 528 A.2d 1090 (1987).

**4.** The double jeopardy clause was made applicable to the states through the due process clause of the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

**5.** The States of the Union are considered as separate and distinct sovereigns for double jeopardy purposes.

contends that this Court should affirm the trial court's decision to sustain his appeal on an alternate ground. Smega asserts that the Ordinance is not substantially similar to the Pennsylvania DUI statute as required under the Compact, 75 Pa.C.S. § 1581(c).

In Pennsylvania Section § 3731(a)(1) of the Code defines driving under the influence of alcohol or controlled substance as follows:

(a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of a vehicle in any of the following circumstances:

(1) While under the influence of alcohol to a degree which renders the person incapable of safe driving.

Whereas, the Ordinance states:

434.01. DRIVING OR PHYSICAL CONTROL WHILE UNDER THE INFLUENCE.

a. *Driving Under Influence.* No person shall operate any vehicle within the Municipality if any of the following applies:

i. The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse.

Smega argues that the Pennsylvania statute requires the Commonwealth to establish that the person accused of violating the statute operated a vehicle and was under the influence of alcohol to a degree that rendered him incapable of safe driving, while the Ordinance only requires that the accused operated a vehicle after alcohol was consumed. According to Smega, the Ordinance is not substantially similar to Pennsylvania's DUI law because it requires only consumption of

alcohol rather than consumption that renders the accused incapable of safe driving.

This issue has been raised with other party states. In *Olmstead v. Department of Transportation, Bureau of Driver Licensing,* 677 A.2d 1285 (Pa.Cmwlth.1996), *affirmed on other grounds,* 550 Pa. 578, 707 A.2d 1144 (1998) [6], David James Olmstead (Olmstead) was convicted in New York of the offense of Driving while ability impaired.[7] Pursuant to the Compact, the Department suspended Olmstead's license for one year. Olmstead appealed his suspension to the Court of Common Pleas of Bradford County which upheld the suspension. Olmstead then appealed to our Court and contended that the New York "Driving while ability impaired" (DWAI) statute was not substantially similar to the Pennsylvania DUI statute and that this Court must recognize the distinction between the DWAI statute and New York's "Driving while intoxicated" (DWI) statute.[8] To resolve this question, this Court reviewed New York case law and found that the Court of Appeals of New York in *People v. Cruz,* 48 N.Y.2d 419, 423 N.Y.S.2d 625, 399 N.E.2d 513 (1979), *appeal dismissed,* 446 U.S. 901, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980) explained the distinction between the two statutes. In *Cruz,* the New York Court explained that with respect to the DWAI statute, "the question in each case is whether, by voluntarily consuming alcohol, this particular defendant has actually impaired, *to any extent,* the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver." *Olmstead,* 677 A.2d at 1287, quoting, *Cruz,* 423 N.Y.S.2d at 628, 399

**6.** Our Pennsylvania Supreme Court affirmed based on its decision in *Sullivan,* and did not address the issue of whether the New York and Pennsylvania statutes were substantially similar.

**7.** N.Y. Vehicle & Traffic Law, Article 31, § 1192(1) provides:
**§ 1192. Operating a motor vehicle while under the influence of alcohol or drugs.**
1. Driving while ability impaired. No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol.

**8.** N.Y. Vehicle & Traffic Law, Article 31, § 1192(2) and (3) provide:

**§ 1192. Operating a motor vehicle while under the influence of alcohol or drugs.**
. . . .
2. Driving while intoxicated; per se. No person shall operate a motor vehicle while such person has .10 of one per centum or more by weight of alcohol in the person's blood as shown by chemical analysis of such person's blood, breath, urine or saliva, made pursuant to the provisions of section eleven hundred ninety-four of this article.
3. Driving while intoxicated. No person shall operate a motor while in an intoxicated condition.

N.E.2d at 516. (Emphasis added by this Court in *Olmstead*.) Also, in *Cruz*, the New York Court explained with respect to intoxication that it "is a greater degree of impairment which is reached when the driver has voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver." *Olmstead*, 677 A.2d at 1287, quoting *Cruz*, 423 N.Y.S.2d at 629, 399 N.E.2d at 517. Based on this distinction drawn by the *Cruz* court, we determined that the DWAI statute was not substantially similar to the Pennsylvania statute and reversed. *Olmstead*, 677 A.2d at 1288.

We analyzed the New Hampshire DUI statute recently and determined that it was substantially similar to Pennsylvania's in *Fisher v. Department of Transportation, Bureau of Driver Licensing*, 709 A.2d 1008 (Pa. Cmwlth.1998). In *Fisher*, Audrey Fisher (Fisher) was convicted of violating New Hampshire Rev.Stat. § 265:82 [Driving under Influence of Drugs or Liquor; Driving with Excess Alcohol Concentration]. The Department then notified Fisher that her driving privilege was suspended for one year pursuant to Section 1532(b) of the Code, 75 Pa.C.S. § 1532(b). *Fisher*, 709 A.2d at 1009. Fisher appealed and the trial court sustained her appeal. *Fisher*, 709 A.2d at 1010.

The Department appealed to our Court and asserted that the trial court erroneously concluded that the New Hampshire statute was not substantially similar to the Pennsylvania statute. The New Hampshire law, N.H.Rev.Stat. § 265:82, provided:

I. No person shall drive or attempt to drive a vehicle upon any way:

(a) While such person is under the influence of intoxicating liquor or any controlled drug or any combination of intoxicating liquor and controlled drugs; or

(b) While such person has an alcohol concentration of 0.08 or more or in the case of a person under the age of 21, 0.02 or more.

Because Fisher refused a chemical test, our Court compared subsection (a) of the New Hampshire statute to the Pennsylvania statute and determined that the two statutes were substantially similar. This Court·analyzed the language of the New Hampshire statute and noted the dictionary definition of "intoxicate".[9] Based on this definition our Court held:

If a person is convicted of driving or attempting to drive a vehicle in this intoxicated or "markedly diminished" mental/physical state, he or she could also be properly convicted of driving or operating a vehicle while under such influence of alcohol as to render him or her unable to drive safely. Any other interpretation of these statutory provisions would ignore common usage and would not give full force and effect to Article IV and the Driver's License Compact in its entirety.

*Fisher*, 709 A.2d at 1010–1011.

This Court further concluded that this holding did not conflict with the decision in *Olmstead* because the New Hampshire statute did not punish "any alcohol-related impairment in driving a motor vehicle." *Fisher*, 709 A.2d at 1011.

We have also analyzed Maryland's DUI statutes, which are similar to New York's insofar as there are two different subsections; one defines "driving under the influence" and one defines "driving while intoxicated". In *Eck v. Department of Transportation, Bureau of Driver Licensing*, 713 A.2d 744 (Pa.Cmwlth.1998), Donald Eck (Eck) was convicted in Maryland for driving "under the influence of alcohol", a violation of Md.Code, Transp. § 21–902(b). *Eck*, 713 A.2d at 744. Maryland, a party state to the Compact, reported the conviction to the Department, which then suspended Eck's operating privilege. Eck appealed to the Court of Common Pleas of Lehigh County (common pleas court). The common pleas court sustained Eck's appeal.

The Department appealed to this Court and contended that the Compact required

---

**9.** Among the definitions of "intoxicate" included in *Webster's Ninth New Collegiate Dictionary* 634 was the following: "to excite or stupefy by alcohol or a drug esp. to the point where physical and mental control is markedly diminished."

that Pennsylvania give effect to the conduct reported as if it had occurred in Pennsylvania and that the Maryland and Pennsylvania statutes were substantially similar because they prohibit the same unlawful conduct and require the same proof for conviction. The Maryland statute, Md.Code, Transp. § 21–902(b), provides: "[d]riving while under the influence of alcohol. – A person may not drive or attempt to drive any vehicle while under the influence of alcohol." *Eck*, 713 A.2d at 745.

This Court analyzed the Maryland statute and determined,

> In Maryland, the use of any amount of alcohol will support a conviction of driving under the influence of alcohol (DUI), Md. Code, Transp. § 21–902(b), and Pennsylvania has no essentially similar offense. Pennsylvania's DUI statute is more akin to the Maryland offense of driving while intoxicated (DWI), Md.Code, Transp. § 21–902(a).[10]

*Eck*, 713 A.2d at 745.

This Court held:

> Because Maryland did not report that Eck had driven while under the influence of alcohol to a degree that he was incapable of driving safely, DOT cannot suspend his operating privilege under Article IV(a)(2) of the Compact as if he had been convicted of such conduct under the Pennsylvania DUI statute. Under subsection (b), Eck's conduct would have no consequences under Pennsylvania law.

*Eck*, 713 A.2d at 745.

Our Court distinguished *Fisher* in *Eck*. Our Court reasoned, "[I]n *Fisher* we upheld a suspension under a New Hampshire statute that prohibited driving under the influence of intoxicating liquor or with a blood alcohol level of .08 percent. The New Hampshire statute [unlike the Maryland statute] was not one that punished any alcohol-related impairment." *Eck*, 713 A.2d at 745. In other words, the New Hampshire statute under scrutiny does not punish an operator who merely consumed a *de minimis* amount of alcohol.

A review of these cases indicates that another state's DUI statute is substantially similar to Pennsylvania's when the foreign state's conviction is for conduct which rises to the level of rendering the person incapable of driving safely. In *Fisher*, the statute under which Fisher was convicted was substantially similar because it was not a violation of the statute to drive while under the influence but not to a level of intoxication. Both New York and Maryland employ a two tier structure for alcohol related driving offenses. Both Eck and Olmstead were convicted under the lesser threshold. Had they been convicted under the more stringent statute, Pennsylvania would have been justified to give that conduct the same effect as it would if the conduct occurred in Pennsylvania.

Presently, the Ordinance under which Smega was convicted required that a driver be under the influence of alcohol. The record does not contain the complete Ordinance, only the subsection under which he was convicted. However, this subsection closely mirrors the Ohio DUI Statute. O.R.C. § 4511.19(A)(1) provides: [n]o person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply: the person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse. Ohio courts have interpreted the term "under the influence" to mean that a "defendant must have consumed alcohol to such an extent as to appreciably impair his ability to operate a motor vehicle." *State v. McCaig*, 51 Ohio App.3d 94, 96, 554 N.E.2d 925, 927. Ohio Courts have determined that under O.R.C. 4511.19(A)(1) the prosecution must prove that the "defendant operated a vehicle when his faculties were appreciably impaired by the consumption of alcohol." *State v. Lowman*, 82 Ohio App.3d 831, 834, 613 N.E.2d 692 (1992). Applying this same standard to the Ordinance, we find that operating a vehicle when a driver's faculties are appreciably impaired substantially similar to the Pennsylvania statute. Smega's contention that one may be convicted under the Ordinance for the mere consumption of any

amount of alcohol is unsupported. Furthermore, there is nothing to indicate that this subsection of the Ordinance or the Ohio statute is a lesser offense as the New York and Maryland statutes were in *Olmstead* and *Eck.* Therefore, we find that the Ordinance is substantially similar to the Pennsylvania statute and that the Department properly suspended Smega's license.[11]

Accordingly, we reverse.

### ORDER

AND NOW, this 16th day of March, 1999, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is reversed.

KELLEY, Judge, dissenting.

I respectfully dissent.

Although the majority concludes that section 434.01(A)(1) of the North Ridgeville Ordinance is substantially similar to section 3731(a) of the Pennsylvania Vehicle Code, 75 Pa.C.S. § 3731(a), the majority notes that the record in this case does not contain the complete Ordinance but only the subsection under which Smega was convicted. Based on the present state of the record, it is patently impossible for this court to determine whether or not this subsection of the Ordinance is a lesser offense as the New York and Maryland statutes were in *Olmstead v. Department of Transportation, Bureau of Driver Licensing*, 677 A.2d 1285 (Pa.Cmwlth.1996), *aff'd on other grounds*, 550 Pa. 578, 707 A.2d 1144 (1998) and *Eck v. Department of Transportation, Bureau of Driver Licensing*, 713 A.2d 744 (Pa.Cmwlth.1998). Thus, the majority's conclusion regarding the similarity of these statutory provisions is based squarely on the unwarranted assumption that section 434.01(A)(1) of the Ordinance is not a lesser offense of another subsection of the Ordinance.

In addition, in determining that this subsection of the ordinance is substantially similar to section 3731(a) of the Pennsylvania Vehicle Code, the majority relies on case law interpreting provisions of the Ohio Revised Code that contain language similar to that contained in section 434.01(A)(1) of the Ordinance. However, there is absolutely no support for the proposition that the language employed in these two distinct statutory provisions promulgated by two distinct legislative bodies has ever been interpreted in the same manner. Because I do not believe that it is proper to reverse the order of the trial court based on such unsupported conjecture and speculation, I would affirm the order of that court.

Judges SMITH and FRIEDMAN join in this dissent.

---

11. We note that Section 1586 of the Code, 75 Pa.C.S. § 1586 was added to the Code in December 1998, effective immediately. Section 1586 states:

> [t]he fact that the offense reported to the department by a party state may require a different degree of impairment of a person's ability to operate, drive or control a vehicle than that required to support a conviction for a violation of section 3731 shall not be a basis for determining that the party state's offense is not substantially similar to section 3731 for purposes of Article IV of the compact.

Because this amendment to the Code is substantive, we will not apply it retroactively to the present case.